UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
APR 0 4 2000
CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| JACK SCHLADETSCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 99-0175 (ESH) |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| HOUSING AND URBAN ) | |
| DEVELOPMENT, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

Before the Court are defendant's motion for summary judgment, plaintiff's cross-motion for summary judgment, and the oppositions of both parties. Having considered the pleadings and the entire record herein, the Court will deny HUD's motion for summary judgment and grant summary judgment to Mr. Schladetsch.

### I. BACKGROUND

**A. General Background**

The Department of Housing and Urban Development ("HUD") provides mortgage assistance through the Federal Housing Administration ("FHA") to individuals interested in purchasing real property. Recipients of FHA loans are required to purchase mortgage insurance by paying all premiums in advance. When a mortgage loan is paid off prior to the loan's

1



maturity date, the mortgagor is entitled to a refund from HUD for a portion of the prepaid mortgage insurance premiums. For loans originating before September 1, 1983, these refunds were termed Distributive Shares, which are dividends of Mutual Mortgage Insurance ("MMI") funds. For loans originating after September 1, 1983, these refunds are known as One-Time Mortgage Insurance Premium ("OTMIP") refunds. "Tracers," such as the plaintiff, are private entities or individuals who, for a fee, find and assist individuals in collecting refunds to which they are entitled.

Through its own program, HUD has been able to locate and distribute checks to 90% of those individuals who are entitled to refunds. With respect to those individuals whom HUD has not located, after a two-year holdback period HUD releases information concerning these unpaid refunds to the public. This information is available on HUD's website and through the National Technical Information Service ("NTIS"). Mr. Schladetsch receives copies of this information in CD-ROM format through NTIS at a monthly cost of $450.00. (Decl. J. Schladetsch, ¶ 5-6.)

**B. Procedural Background**

Invoking the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, plaintiff requested from HUD the production of certain records in electronic form. Specifically, Mr. Schladetsch requested records relating to listings of unpaid refunds for loans paid off between 1977 and August 6, 1995, including those refunds that were approved for payment but were never actually paid due to either uncashed or undelivered U.S. Treasury checks. HUD's response granted

Mr. Schladetsch's request in part and denied it in part.[1] HUD referred Mr. Schladetsch to the National Technical Information Service ("NTIS") at the Department of Commerce and to HUD's website for a listing of individuals entitled to refunds. With respect to individuals where payment had been approved but not made, HUD provided Mr. Schladetsch with a copy of Limited Payability Cancellation reports dating from 1991 to 1995. In his appeal to HUD, Mr. Schladetsch claimed that the Limited Payability Cancellation reports did not provide the information he requested.

Mr. Schladetsch's appeal to HUD challenged the denial of access to listings and the withholding of personal identifying information. When HUD did not respond more than twenty (20) days after receiving the appeal, Mr. Schladetsch filed this case in order to obtain the production of the withheld records in electronic form. In particular, Mr. Schladetsch seeks a listing of all MMI and OTMIP refunds which have been approved for payment but never actually paid due to either uncashed or undelivered U.S. Treasury checks. He requests that HUD compile the following information in magnetic tape or CD-ROM form: 1) the FHA case number; 2) the name of the payee; 3) the dollar amount of the U.S. Treasury check; 4) the mailing address of the payee as it appeared on the U.S. Treasury check; 5) the address of the former FHA mortgage

---

[1] HUD's letter denying Mr. Schladetsch's request in part, dated November 9, 1998, claimed that loans and payment information certification was excluded from production under Exemption 4, and personal identifying information was excluded under Exemption 6. (Compl., Attachment C ¶ 2.) In response, Mr. Schladetsch cited cases which explained that because HUD had already made the requested information public, it could not claim an exemption. See, e.g., CNA Financial Corp. v. Donovan, 830 F.2d 1132, 1154 (D.C. Cir. 1987) (regarding Exemption 4), and The Nation v. United States Customs Service, 71 F.3d 885, 896 (D.C. Cir. 1995) (regarding Exemption 6). (Compl. Attachment D ¶ 3.) HUD has not since relied upon these exemptions to justify its denial of Mr. Schladetsch's FOIA request.

insured property; 6) the date of the U.S. Treasury check; and 7) the date the FHA mortgage insurance loan was paid in full.

HUD has conceded that it possesses in its databases all the discrete pieces of information that Mr. Schladetsch has requested (Def.'s Mem. in Support of its Mot. Summary Judgment, ¶ 3 ["Def. Mem."]; 1st Decl. D. Thomas, ¶ 14), but it claims that it does not possess the information in the isolated compilation that Mr. Schladetsch seeks. (Def. Mem., ¶ 3.) HUD has claimed that it would take 185 hours at a cost $14,041.50 in order to comply with Mr. Schladetsch's request. (Def.'s Statement of Material Facts to which there is no Dispute, ¶ 8-9.) It also claims that it is not obligated to comply because the request would require HUD to create a new record and would impose an "unreasonable burden" upon HUD. (Def. Mem., ¶ 7.)

## II. ANALYSIS

### A. Summary Judgment Standard

Both parties have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is granted when there are no genuine issues as to any material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact is one that could change the outcome of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Summary judgment is appropriate only when the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1984).

## B. Parties' Motions for Summary Judgment

In a FOIA case, the Court shall determine <u>de novo</u> the issue of whether an agency has properly withheld agency records. <u>See</u> 5 U.S.C. § 552(a)(4)(B). Both parties agree that the sole issue before the Court on their cross-motions for summary judgment is whether HUD is obligated under FOIA to conduct an electronic search in order to retrieve the records which Mr. Schladetsch has requested. (Def.'s Reply to Pl.'s Opp. To Def.'s Mot. for Summary Judgment and Opposition to Pl.'s Mot. Summary Judgment, ¶ 2; Pl.'s Reply to Def.'s Opposition to Pl.'s Mot. Sum. Judg., ¶ 5.)

The FOIA was enacted to facilitate public access to Government documents. <u>See, e.g.</u>, <u>United States Dept. of State v. Ray</u>, 502 U.S. 164, 173 (1991). Even when the requester files a motion for summary judgment, <u>see</u> <u>National Ass'n of Gov't Employees v. Campbell</u>, 593 F.2d 1023, 1027 (D.C. Cir. 1978), there is a strong presumption in favor of disclosure that results in the placing of the burden on the agency to justify the withholding of any requested documents. <u>See</u> <u>Department of Justice v. Reporters Comm.</u>, 489 U.S. 749, 755 (1989). The burden upon the requester is merely "to establish the absence of material factual issues before a summary disposition of the case could permissibly occur." <u>Public Citizen Health Research Group v. Food & Drug Admin.</u>, 185 F.3d 898, 904-905 (D.C. Cir. 1999). The agency bears the burden of sustaining its action. <u>See</u> 5 U.S.C. § 552(a)(4)(B).

## C. Electronic Database Searches Do Not Amount to the Creation of Records

The relevant section of the FOIA specifies that "[i]n responding . . . to a request for records, an agency shall make reasonable efforts to search for the records in electronic form or

format, except when such efforts would significantly interfere with the operation of the agency's automated information system." 5 U.S.C. § 552(a)(3)(C). In enacting the Electronic FOIA Amendments of 1996, Pub. L. No. 104-231, 110 Stat. 3048, Congress defined the term "search" as requiring an agency to "review, manually or by *automated means*, agency records for the purpose of locating those records which are responsive to a request." 5 U.S.C. § 552(a)(3)(D) (emphasis added). Electronic database searches are thus not regarded as involving the creation of new records. See FOIA Update, Winter 1997, at 6 (citing H.R. Rep. No. 104-795, at 22 (1996)).

The FOIA applies equally to all agency records, regardless of format. See Yeager v. DEA, 678 F.2d 315 (D.C. Cir. 1982). "Although accessing information from computers may involve a somewhat different process than locating and retrieving manually-stored records, these differences may not be used to circumvent the full disclosure policies of the FOIA." Id. at 321. The fact that the agency may have to search numerous records to comply with the request and that the net result of complying with the request will be a document the agency did not previously possess is not unusual in FOIA cases, nor does this preclude the applicability of the Act. Disabled Officer's Assn. v. Rumsfeld, 428 F. Supp. 454, 456 (D.D.C. 1977), aff'd, 574 F.2d 636 (D.C. Cir. 1978).

A computer program is needed in order to "search", i.e., to "review . . . by automated means, agency records for the purpose of locating those records which are responsive to a request." See 5 U.S.C. § 552 (a)(3)(C). Because an electronic search of computer databases does not amount to a creation of records, see H.R. Rep. No. 104-795, at 22 (1996), it follows that the programming necessary to instruct the computer to conduct the search does not involve the creation of a record. HUD's contrary contention, which it supports by citing Clarke v. United

States Dept. of the Treasury, 1986 WL 1234 (E.D. Pa. 1986), decided prior to the enactment of the Electronic FOIA amendments, must be rejected. Because HUD has conceded that it possesses in its databases the discrete pieces of information which Mr. Schladetsch seeks, extracting and compiling that data does not amount to the creation of a new record. Rather, Mr. Schladetsch has requested HUD to conduct an electronic search of its databases. The programming necessary to conduct the search is a search tool and not the creation of a new record. Thus, the dispute in this case centers around a search issue under 5 U.S.C. § 552 (a)(3)(C) and not a "form or format" issue under 5 U.S.C. § 552 (a)(3)(B).[2]

### D. "Reasonable Efforts" in Conducting a Search

Subsection (a)(3)(C) "promotes electronic database searches and encourages agencies to expend new efforts in order to comply with the electronic search requirements of particular FOIA requests. It will necessarily require an agency to determine, in any case in which a requested database search would involve new programming and database-retrieval efforts, whether those efforts are 'reasonable' under the particular circumstances involved." FOIA Update, Fall 1996, at 2.

---

[2] Subsection (a)(3)(B) concerns a requester's choice of "form or format." Choice of form or format typically means a choice between microfiche and computer form, see Dismukes v. Department of the Interior, 603 F. Supp. 760, 763 (D.D.C. 1984), or visicorder charts and paper form. See Chamberlain v. United States Dept. of Justice, 957 F. Supp. 292, 296 (D.D.C. 1997). Mr. Schladetsch has not requested that HUD reproduce the records in a form other than the one in which HUD currently maintains the records -- in electronic form. Thus, subsection (a)(3)(B) does not apply here.

HUD claims that it is not obliged to comply with Mr. Schladetsch's request because it has "already made a concerted effort to make the information concerning refunds to individuals public information[.]" (Def. Mem., ¶ 7.) The Supreme Court has, however, rejected the proposition that requested information was properly withheld under the FOIA because the information was already publicly available. United States Dept. of Justice v. Tax Analysts, 492 U.S. 136, 150 (1989). HUD also asserts that its public efforts render it unnecessary under the FOIA to comply with Mr. Schladetsch's request because compliance would only serve Mr. Schladetsch's business interests and would not serve any public interest. (Def. Mem., ¶ 7-8.) However, "the requester's intended use is also irrelevant in a FOIA action." E.g., Abraham & Rose, P.L.C. v. United States, 138 F.3d 1075, 1079 (6th Cir. 1998). See also Petroleum Information Corp. v. United States Dept. of the Interior, 976 F.2d 1429, 1437 (D.C. Cir. 1992) (citing Environmental Protection Agency v. Mink, 410 U.S. 73, 86 (1973) ("The FOIA, however, is largely indifferent to the intensity of a particular requester's need.")). Thus, neither the public release of the refund information, nor the interests that will allegedly be served by complying with the request excuse HUD from complying with Mr. Schladetsch's request.

### E. Significant Interference with HUD's Automated System

It is an exceptional situation when a search effort would "significantly interfere" with an agency's computer system. See FOIA Update, Fall 1996, at 2. See also FOIA Update, Winter 1997. As stated above, subsection (a)(3)(C) "promotes electronic database searches and

encourages agencies to expend new efforts in order to comply with the electronic search requirements of particular FOIA requests." FOIA Update, Fall 1996, at 2. HUD claims that it is not obligated to conduct the electronic search because such a search would "significantly interfere with the operation of the agency's automated information system." 5 U.S.C. § 552(a)(3)(C). HUD alleges that conducting the electronic search and retrieving the requested information would take approximately 185 hours, which would be "extremely burdensome on the operation of the Department's computer systems."[3] (2nd Decl. D. Thomas, ¶ 3.) HUD concludes that its "available resources (staff) are stretched to the limit keeping up with these current requirements.[4] Some of the work would have to be stopped to accommodate this request. This would cause significant interference and adversely impact the efficiency and effectiveness of the agency's computer systems." (2nd Decl. D. Thomas, ¶ 5.)

Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for withholding the information with reasonably specific detail, demonstrate logical use of exemptions,[5] and are not controverted by evidence in the record. Miller v. Casey, 730 F.2d 773, 776 (D.C. Cir. 1984) "Of course, if the affidavits do not meet this

---

[3] As correctly observed by the plaintiff, HUD provides very little explanation for this figure, and through the affidavit of Ms. Thomas, plaintiff has raised substantial questions as to the sufficiency of HUD's evidence.

[4] At the time of the declaration, current requirements allegedly included making its computer system Y2K compliant. HUD's reference to the burden which the search would impose on its Y2K compliance project is presumably now moot.

[5] Because there are no claimed exemptions at issue here, HUD's affidavits need not "demonstrate logical use of exemptions."

standard, not only is summary judgment not appropriate in favor of the government, but such a remedy may well be called for, as a matter of law, for those persons seeking the information." Dayton Newspapers, Inc. v. Department of the Air Force, 35 F. Supp. 2d 1033, 1034 (S.D. Ohio 1998).

In this case the declarations of Ms. Thomas submitted by HUD do not satisfy this standard. The declarations have not addressed the issue of "significant interference" with sufficient specificity to permit this Court to make an independent review of the extent to which the processing of Mr. Schladetsch's request would actually interfere with the operations of HUD's computer system. Although Ms. Thomas' second declaration lists the day-to-day work performed by HUD's computer systems, it fails to explain how or to what extent these activities would be burdened by complying with Mr. Schladetsch's request. Additionally, the Y2K project cited by HUD should have been completed by now and is not a consideration as to whether complying with Mr. Schladetsch's request would substantially interfere with HUD's computer system. Moreover, even if, as alleged by Ms. Thomas, "nothing new will be implemented into production until April, 2000" (2nd Decl. D. Thomas, ¶ 4), this date is upon us now and is not a reason to deny Mr. Schladetsch's request.

Given the evidence before the Court, it must be concluded that HUD has not met its burden of showing that searching for the records sought by Mr. Schladetsch would require HUD to undertake "unreasonable efforts" or that the search would "substantially interfere" with HUD's computer system.

## III. CONCLUSION

For the foregoing reasons, the Court grants plaintiff's motion for summary judgment and denies defendant's motion for summary judgment. An Order consistent with this Memorandum Opinion is entered this same day.

April 4, 2000

_____
Ellen Segal Huvelle
United States District Judge

11